# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| UBIQUITOUS CONNECTIVITY, LP,<br><br>Plaintiff,<br><br>v.<br><br>TXU ENERGY RETAIL COMPANY LLC,<br><br>Defendant. | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff UBIQUITOUS CONNECTIVITY, LP (hereinafter, "Plaintiff" or "Ubiquitous"), by and through its undersigned counsel, files this First Amended Complaint for Patent Infringement against Defendant TXU ENERGY RETAIL COMPANY, LLC (hereinafter, "Defendant" or "TXU") as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of Plaintiff's United States Patent Nos. 10,344,999 (hereinafter, the "'999 Patent" or the "Patent-in-Suit"), copies of which are attached hereto as **Exhibit A**.

2. Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3. Ubiquitous is a limited liability partnership organized and existing under the laws of the State of Texas since February 14, 2012 and maintains its principal place of business at 2436 Tisbury Way, Little Elm, Texas, 75068 (Denton County).

4. Based upon public information, Defendant TXU is a corporation duly organized and existing under the laws of the state of Texas since June 29, 2007.

5. Based upon public information, Defendant TXU has its principal place of business located at 6555 Sierra Drive, Irving, Texas 75039 (Dallas County).

6. Based upon public information, Defendant TXU may be served through its registered agent, Capitol Corporate Services, Inc., 206 E. 9th St., Suite 1300 Austin, Texas 78701.

7. Based upon public information, Defendant ships, distributes, makes, uses, offers for sale, sells, and/or advertises its products and/or services under the iThermostat branded system.

## JURISDICTION AND VENUE

8. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

9. The Court has personal jurisdiction over Defendant because: Defendant has minimum contacts within the State of Texas and in the Northern District of Texas; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in the Northern District of Texas; TXU has sought protection and benefit from the laws of the State of Texas and is incorporated there; Defendant regularly conducts business within the State of Texas and within the Northern District of Texas, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and in the Northern District of Texas.

10. More specifically, TXU, directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and affiliated services in the United States, the State of Texas, and the Northern District of Texas. Based upon public information, Defendant has committed patent infringement in the State of Texas and in the

Northern District of Texas. Defendant solicits customers in the State of Texas and in the Northern District of Texas. Defendant has many paying customers who are residents of the State of Texas and the Northern District of Texas and who use Defendant's products in the State of Texas and in the Northern District of Texas.

11. Venue is proper pursuant to 28 U.S.C. §1400(b) because Defendant resides in the Northern District of Texas because of its formation under the laws of Texas and because Defendant has its principal place of business in the Northern District of Texas.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in the Northern District of Texas because of its formation under the laws of Texas, which subjects it to the personal jurisdiction of this Court.

## BACKGROUND INFORMATION

13. The Patent-in-Suit was duly and legally issued by the United States Patent and Trademark Office (hereinafter, "USPTO") after full and fair examinations.

14. Plaintiff is the owner of the Patent-in-Suit, and possesses all right, title and interest in the Patent-in-Suit including the right to enforce the Patent-in-Suit, the right to license the Patent-in-Suit, and the right to sue Defendant for infringement and recover past damages. *See* **Ex. A** at A-1.

15. Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.txu.com, through which Defendant advertises, sells, offers to sell, provides and/or educates customers about its products and services, including but not limited to Defendant's TXU iThermostat branded system (collectively, the "Accused Products and Services"). Evidence obtained from TXU's website (and others) regarding these products is provided in **Exhibit B, Exhibit C, Exhibit D,** and **Exhibit E**.

16. TXU offers its customers the ability to download the TXU iThermostat app, which allows users to control their iThermostat device remotely from a mobile device such as but not limited to an iPhone, iPad, or Android device. *See* **Ex. B**, at p. B-3 (indicating the app is available for download on the Apple App Store and for Android at Google Play).

17. According to the description of the TXU iThermostat app on TXU's webpage:






Figure 1

*See* **Ex. B**.

18.     According to the description of the TXU iThermostat app on the Applications page for Apple iPhones, the provider for the TXU iThermostat app is TXU Energy Retail Company LLC.  *See* **Ex. C** at p. C-2.

19.     According to the description of the TXU iThermostat app on the Applications page for Apple iPhones:



Figure 2

*See* **Ex. C** at p. C-1.

20.     Upon information and belief, the iThermostat app allows users (1) to change the settings of their iThermostat in near real-time (typically within one minute) from their mobile devices; (2) to set heating and cooling schedules for the iThermostat from their mobile devices; (3) provides users with usage data related to the iThermostat system; and (4) to set the distance from their iThermostat that will adjust the "Away mode" of the iThermostat system.  *See* **Ex. D**.

21. Upon information and belief, at least certain TXU iThermostat systems provided to customers also include a feature known as Radius™. *See* **Ex. D** and **Ex. E** This Radius™ uses GPS location serves on a user's mobile device "to determine when you've left your location and turns on Away for your thermostat(s)." *See* **Ex. D** at p. D-5.

22. Upon information and belief, the Brighten® iThermostat device may also receive current room temperature readings from a thermostat and send control instructions, *i.e.* increasing or decreasing room temperature, to the user's HVAC system. *See* **Ex. E**, at p. E-3 and E-4.

23. TXU provides guidance to its prospective customers through documents that provide information to educate users about the benefits of iThermostat system and how to choose the right system for a customer's particular requirements. *See* **Exs. B-E**.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,344,999

24. Plaintiff re-alleges and incorporates by reference all paragraphs above.

25. The Patent-in-Suit was duly and legally issued on July 9, 2019 by the United States Patent and Trademark Office (hereinafter, "USPTO") after full and fair examination of USPTO Application No. 15/405,793 (the "'793 Application") which was filed on January 13, 2017. *See* **Ex. A** at A-1.

26. The '793 Application was a continuation of USPTO Application No. 13/271,203 (the "'203 Application") which was filed on October 11, 2011 and issued after full and fair examination as U.S. Patent 9,602,655. *See* **Ex. A** at A-1.

27. The '203 Application was a continuation of USPTO Application No. 11/686,993 (the "'993 Application") which was filed on March 16, 2007 and issued after full and fair examination as U.S. Patent 8,064,935. *See* **Ex. A** at A-1.

28.     The '993 Application was a division of USPTO Application No. 11/163,372 (the "'372 Application") which was filed on October 17, 2005 and issued after full and fair examination as U.S. Patent No. 7,257,397.  *See* **Ex. A** at A-1.

29.     The '372 Application is itself a divisional of USPTO Application No. 11/160,006 (the "'006 Application") which was filed on June 6, 2005 and issue as and issued after full and fair examination as U.S. Patent No. 6,990,335.  *See* **Ex. A** at A-1.

30.     The '006 Application traces its priority to USPTO Provisional Application No. 60/522,887 which was filed on November 18, 2004.  *See* **Ex. A** at A-1.

31.     Plaintiff is informed and believes that Defendant has infringed and continues to infringe claims of the '999 Patent, either literally or under the doctrine of equivalents, through the manufacture and sale of infringing system under the iThermostat brand, and other product lines. Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '999 Patent, including Claim 1, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices, including at least the Accused Products and Services, that form a wirelessly controllable system that incorporates a wall-mountable housing (Brighten® iThermostat) including an environmental device, communication interface, wireless circuit and microcontroller and that can communicate with a remote unit (wireless telephone). *See*, *supra*, Paragraphs 16-23, and Figures 1 and 2.

32.     Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '999 Patent in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use the Accused Products and Services in an infringing manner.  To the extent that Defendant is not the only direct infringer of

the '999 Patent, customers that have purchased and/or used the Accused Products, including the iThermostat (*see* **Exs. B-E**), constitute direct infringers.

33. Despite knowledge of the '999 Patent as early as the date the Original Complaint was served on Defendant, and based upon public information, Defendant continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes the '999 Patent. *See* **Exs. B-E**. Based upon public information, the provision of and sale of the Accused Products and Services is a source of revenue and a business focus of Defendant. *See id*.

34. Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes the '999 Patent by, at a minimum, providing and supporting the Accused Products and Services and instructing its customers on how to use them in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information. *See e.g.* **Exs. B-E**.

35. Specifically, Defendant offers design services to select, deploy and integrate its products to assist its customers in installing and utilizing the infringing remote-control system. *See e.g.*, **Exs. B-E**. Based upon public information, Defendant knew that its actions, including but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers of the '999 Patent by continuing to sell, support, and instruct its customers on using the Accused Products and Services. *See e.g.*, **Exs. B-E.**

36. Upon information and belief, Defendant also contributes to the infringement of the '999 Patent by offering for sale and/or selling components that constitute a material part of the invention claims in the '999 Patent.

37. For example, Defendant has offered for sale and/or sold numerous thermostat systems and iThermostat devices that infringe the '999 Patent, as discussed above.

38. Upon information and belief, TXU's iThermostat system have no substantial, non-infringing uses. For example, the TXU website states:

> *TXU iThermostat is available in eligible services areas for single-family homes with compatible central HVAC and high-speed Internet services. Requires 2-year agreement on TXU Conservation Program, which may include brief on/off cycling (10-15 minutes) of customer's air conditioner or modification to thermostat setpoints no more than four degrees higher than programmed settings (up to 1-4 hours) via remote signal from TXU Energy during periods of peak energy usage from May-September; customer may opt out of individual demand response events. Applicable monthly fee appears on your TXU Energy bill. See terms and conditions for details.

Figure 3

See **Ex.B**, at p. B-4. In essence, TXU requires customers have Internet access and participation in TXU Conservation Program.

39. As a result, these iThermostat systems can only be used in a manner that infringes the '999 Patent, and on information and belief, have been used by Defendant's customers in a manner that directly infringes one or more claims of the '999 Patent.

40. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

41. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42. Defendant's infringement of Plaintiff's rights under the '999 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

43. Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

44. Plaintiff respectfully requests the following relief:

   A. An adjudication that one or more claims of the Patent-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by the Defendant;

   B. An adjudication that Defendant has induced infringement of one or more claims of the Patent-in-Suit based upon post-filing date knowledge of the Patent-in-Suit;

   C. An award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement and any continuing or future infringement up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

   D. A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Defendant and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from further

        acts of infringement with respect to any one or more of the claims of the Patent-in-Suit;

E.    That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

F.    Any further relief that this Court deems just and proper.

Dated: December 08, 2020

Respectfully submitted,

*/s/ Kirk L. Pittard*
**DURHAM, PITTARD & SPALDING, LLP**
Kirk L. Pittard (Bar No. 24010313, TX)
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433
Email: kpittard@dpslawgroup.com

**Of Counsel**
**HENINGER GARRISON DAVIS, LLC**
James F. McDonough, III (Bar No. 117088, GA)*
Jonathan R. Miller (Bar No. 507179, GA)*
Travis E. Lynch (Bar No. 162373, GA)*
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863, -0867
Facsimile: (205) 547-5504, -5506, -5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

* admission *Pro Hac Vice* to be applied for

*Attorneys for Plaintiff*
*Ubiquitous Connectivity, LP*

## List Of Exhibits

A. U.S. Patent No. 10,344,999 ("'999 Patent")

B. Website: https://www.txu.com/savings-solutions/txu-ithermostat.aspx

C. Website: https://itunes.apple.com/us/app/txuithermostat/id955585158?mt=8

D. Website: https://ithermostat.txu.com/it/support.html

E. Personal Reference Guide: Brighten® iThermostat